Good morning. If it pleases the Court, my name is Michael Tremann. I represent the appellant, Mr. Gonzalez. In light of the fact that the briefing in this case was a little unusual because the Federal Public Defender's Office filed the opening brief, and then after they were relieved, I submitted a reply brief to the government's answering brief, I wanted to make sure from a standpoint of oral argument that I had in particular addressed the three issues that are discussed in both the opening brief and in the reply brief, two of which the probation department agreed, in essence, with the defendant's position that the enhancements did not apply. Those two are the enhancement for sophisticated means and the vulnerable victim enhancement. The probation department, both in its original report and in its revised report after the government sought the application of those two enhancements, rejected that either one of those enhancements should have been applied. However, the district court judge did proceed to apply both of those enhancements. The other issue that was raised in the report was that it was primarily a factual determination, is it not? I don't view them as a factual determination, Your Honor. I view them, and I say that because I don't really see that there were facts in dispute. What I see is whether or not those facts as applied to the applicable guidelines should have resulted in enhancements. So mixed question of law and facts? Shall we compromise? Yes, and I think, as indicated in the opening brief, that the standard of review, therefore, would be different on that issue because it is a mixed question. Well, let me take the most egregious example, which is the vulnerable victim enhancement for the woman who was looking to care for her disabled child. If that isn't a vulnerable victim, I don't know what is. I mean, she basically took the proceeds of the settlement that had been received on behalf of the little girl, entrusted them to your client's care. He assured her that he would return the money tenfold and that her daughter would walk again. That seems to me to be a pretty compelling set of facts to find a vulnerable victim. So how can we declare error on the part of the district judge in rejecting probation's recommendation in the face of those facts? I think I differentiate between the concept of somebody who is a victim and maybe a defendant's conduct is egregious and whether or not that should result in the classic vulnerable victim, if you will, enhancement. So you wouldn't consider a person in that category as a potentially vulnerable victim? Well, potentially vulnerable is a different question. And I say that because you're fighting me on this. I mean, that is a vulnerable person by definition. So then the question is there were other victims. I mean, maybe you could say, well, it was only one out of 50 or however many there were. And I don't see that as being a vulnerable victim for purposes of the enhancement. And I say that because what is it about the individual that makes her vulnerable in terms of this scheme? Well, how about the inducement? If you give me all the money that you got from the insurance settlement that's supposed to care for this child for the rest of her life and I'm going to give it back to you tenfold and, by God, she's going to walk again, that sure seems to me to be preying on a mother in a very delicate situation. And he well knew that that's why she wanted to invest the money with him. And I'm not arguing that he didn't know. My point is if her circumstances are what result in the enhancement, then it becomes very difficult to find any victim who doesn't, therefore, result in the enhancement. Well, but that's what Rising Sun says. Courts must consider the individual characteristics of the victim, one, and two, the specific circumstances in which the victims found themselves that made them particularly susceptible to the criminal offense. That's all my colleague has done. He's talked about the individual characteristics of the victim. Then he talked about the specific circumstances the victim found themselves in. But all investors in almost whether it's a Ponzi scheme or not, almost all investors, depending upon how you want to look at them, what facts you want to look at, meet that standard. Well, but just a minute, that didn't happen here. It was advertised to the general public, and then he went further. He met with the customers face to face and used their specific circumstances to secure the investment. That's not, I mean, I can see if all he did was make a general advertisement to everybody, but that isn't what happened here. But isn't that what happens in all of these cases? No, it isn't what happens in all of the cases. If you advertise in some, as opposed to the telemarketing scheme where that, where the defendant is reaching out for particular people. This is a general advertisement. Somebody calls in, and on the basis of that, they have a meeting, and in that meeting, what takes place in essence is that the person is convinced to make the investment. Well, they're convinced to make the investment on their particular circumstances. I would like to retire when I'm 65, but I don't have enough money because my General Motors went bankrupt, and my pension fund. Well, here we have another victim here, which my colleague picked out, the illegal alien. I picked out the recently divorced person who was unemployed in need of immediate income, told her to go out and get $25,000 from the credit cards to invest with him. He had her right in dead in front of him. Again, I'm not disagreeing that those are the underlying facts. My point is for the enhancement to apply. If we were talking about where within a scale somebody ought to be sentenced, then I can understand the nature of the argument that Your Honor is making. But I'm looking at a guideline enhancement, and my question becomes, where do you draw the line between where the enhancement applies and where it doesn't apply? Well, we've approved it in cases, for example, where the fraud artists preyed on people who didn't speak English, basically a particular, say, the Latino community, where the majority of the victims spoke only Spanish. Well, I think as I did in the answering brief, I distinguished those cases, and that wasn't, as I recall, the test, if you will, that was used. Because if that's the case, then what's the theory under which people who speak Spanish are particularly vulnerable? Well, the problem I have with your argument, Mr. Freeman, is your client hit just about every category in which we have a published case that approves the enhancement for vulnerable victims. He preyed on illegal aliens, the elderly, people who gave up their life savings, the guardian of a severely disabled minor, Spanish speakers. I mean, he hits every category. And you're trying to tell us that it was error on the part of the district court to impose a two-level enhancement in the face of these facts? What I'm saying is that the nature of the particular fraud, which is what I'm looking at as whether or not there's a connection to the particular individuals who are being looked at as being vulnerable victims. And if the nature of the fraud doesn't connect to that, in other words, if he's not out trying to get those kinds of people, let's say that he received a list, and the list said, all of these people are available for your kind of a scheme because they have previously bit on this bullet before, and you can go get them again. And then he goes out and he goes and gets them again. There I can see the connection. And if somebody said, here's a list of Spanish-speaking people who have, who are poor and unemployed and need money, and if you go out to them, they are going to be likely to bite on this bullet, it's a different argument. That's not the fraud in this case. We have a general circulation of just like pick up the Wall Street Journal. And somebody calls in on that, and on the basis of their particular circumstances, which are discussed with whoever they're talking to, they decide to go ahead and make the investment. And the person they're talking to tries to convince them that in their circumstances it's a good investment. I see that as different. Are we really looking here at what you think my standard of review is for the district court? Is that what you're really asking me to concentrate on? Because this is a district court who I think I should give clear air review to. He made a determination. He's in the sentencing position. He has all this stuff in front of him. Unless it's clear air, I ought to say, well, you did a good job. Are you saying it's bigger than that? I'm saying the standard is abuse of discretion, not clear error, because we are. Well, even abuse of discretion. Let's just change. You're suggesting that I should find that this is an abuse? Abuse? My point is, is that the facts that are not being disputed don't support the award, and in particular the three enhancements that I've outlined in the reply brief. Is your position essentially, would you see it as a legal one, where you're saying that the vulnerable victim enhancement only applies when the wrongdoer sets out to prey on vulnerable victims? And if he finds one after he's sent out his general circulation mailer, I want to defraud people. Then when he's talking to one on the phone and they happen to mention, I've got three kids dying of leukemia and I really need this and I'm going to max out my credit cards. If that happens, under your theory of the law, it seems like you're saying that isn't a situation where the vulnerable victim enhancement will apply. A judge might look at those facts and ratchet up the sentence within the range, but if the wrongdoer doesn't out of the chutes focus on vulnerable people, then it is not applicable. Is that your argument? I'm not strictly arguing that there's a target connection. I'm backing off of that because I think that law was changed. But what I am saying is that the nature of the fraud has to somehow relate to the vulnerability that we're talking about. There's got to be some interrelationship there. They went after a vulnerable person, not they just found out the person was vulnerable after they got them in their collections. Right. There's something about the nature of the fraud that this individual wants to perpetrate that has a connection to the kind of people who then get brought into that particular scheme. Let's say the nature of the people are people who are upside down in their mortgages. There's something about the nature of what the defendant is doing. Otherwise, what we're really doing, it's random. The defendant can run exactly the same scheme, and if he doesn't get the phone call from the divorced mother who's unemployed, he doesn't get the two-level enhancement. And is that what we're punishing, or are we punishing the nature of the scheme at a base level? And then it may be for how that scheme is used in an individual basis. That's a reason to increase or decrease a sentence within a particular range. That is the distinction I'm trying to make. Mr. Freeman, you're over your time. Thank you. Let's hear from the government. Thank you very much. Good morning, Your Honors, and may it please the Court. Stephen Kazaris for Appellee United States of America. With respect to the enhancement for the vulnerable victim, the government would just like to add that the enhancement and the section of the guideline itself is framed in the singular, not in the plural. It's framed whether a defendant knew a vulnerable victim was particularly vulnerable and carried certain characteristics, not whether victims or the scheme targeted a population or group, although that may satisfy the enhancement itself. A close reading of 2B1.B9 – I'm sorry. A close reading of 3A1.1B1 actually does – it is framed in the singular. I would like to address some of the other enhancements and issues raised by a defendant because the government does believe that the vulnerable victim enhancement has been more than proven sufficiently and should be affirmed. First, with respect – Does that mean if a person's committing fraud, the law expects this person who's trying to steal somebody's money, when he finds out that that hoped-for victim has a difficult circumstance at home, like a sick child that needs care, that he's – we expect that criminal wrongdoer to stop and say, I better not do that one because that's a person that I think might be considered by a court later to be vulnerable? I don't believe that that's what the guideline is addressing. What I believe it's addressing is the level – It seems like that's what you just said. I believe it's addressing levels of criminality and culpability for a defendant. Different fraud schemes can have different levels of, I would say, criminality, of extreme conduct and intent. And while every fraudster in this type of a Ponzi scheme intends to defraud these individuals, where the individual defendant becomes aware of certain facts that, in this instance, where you have a vulnerable victim who has particular characteristics, and that defendant seeks to not only take that person's money but identifies that trait and then takes advantage of it, really ratchets up the pressure on that individual, using a particularly tailored pitch to that individual, that's going a step beyond the kind of general fraud scheme and really, in this instance, the government would submit and the government didn't seek this in the district court, but that's extreme conduct. Defendants in that situation are not only eligible for the vulnerable victim enhancement, but in taking advantage of the mother, the single mother of a disabled child in that situation and taking that money, that's going to impact that child for the rest of that child's life. Did you just say the government did not take this position? The government did not seek an upward departure for extreme conduct. Oh, for extreme conduct. Okay. The government does submit, though, that the facts here could have supported such a request by the government. I thought you were saying that you had not sought a vulnerable victim. No, we did seek the vulnerable victim. Absolutely, Your Honor. I just wanted to make sure I understood the record. Yeah. We did not seek the extreme conduct enhancement, but government submits that the facts even supported that in the defendant's treatment of this particular investor and this particular circumstance. Unless Your Honor has other questions regarding that enhancement, I did want to address a couple of other issues raised by the defendant with respect to the aggravating role enhancement and whether or not defendant's brother, Mr. Zaragoza, was a participant. The government submits that in both the underlying wire fraud scheme, to which defendant pled guilty in Count 8, as well as the relevant conduct, the 1957 money laundering transaction in Count 10, to which Zaragoza, the brother, pled guilty, but defendant did not. The government submits that the evidence supports the enhancement under either circumstance because Zaragoza was admittedly a participant in the wire fraud scheme in his plea allocution to the county. So how do you distinguish this from McGregor? Well, in McGregor you had a circumstance where the wife engaged in a single act on a single day that contributed to the criminal conduct, and the court in that instance even noted that that was an extremely rare and unique circumstance where, in most cases, even that sort of participation would satisfy the interest. How many times did Zaragoza withdraw? The facts supported, the facts established that Zaragoza both deposited the funds into the account, claiming to be defendant and signing defendant's name, and then went back later on and withdrew the funds. Didn't he withdraw once? Again, impersonating the defendant. The withdrawal was one transaction. That sounded to me just like McGregor. Well, no. What you had here, though, was a course of conduct over about two to three weeks in which the defendant is providing instructions from jail to his wife in how to extract the money, and then that is communicated to Zaragoza, who then carries out those instructions in two different events, if you will, one depositing the funds, forging defendant's signature, the other extracting the funds, again, forging defendant's signature and impersonating the defendant. So you don't have a one-day, one-instance wife delivering package or handing package over to individuals who show up at her door. Here you have individuals visiting defendant in custody, having phone calls with him to gain instructions, engaging in at least two transactions that then amount to the execution of the 1957 money laundering in Count 10. For those reasons, the government submits that Zaragoza is clearly a participant under either both the wire fraud underlying SUA as well as the 1957 money laundering transaction. In all these enhancements, what do you find my standard to review to be? Your Honor, the government submits that clear error is the standard, but even under an abuse of discretion standard. Why do you say it's clear error? Do you think they are disputed facts? Well, defendant is in some ways challenging whether or not an individual is a vulnerable victim based on her, for example, her particular characteristics and whether or not the facts in which she found herself satisfied the enhancement. That is a question of fact. But he doesn't really dispute the facts of any of this. He just disputes what the district judge did with the facts, doesn't he? Well, it's a little more. I mean, there wasn't a dispute of fact, really. Well, it's a little more nuanced than that, though, because defendant is suggesting that this victim is no different than every other victim in the case and no different than every other victim targeted by the scheme. And that is, in some ways, challenging the facts and attempting to, I would guess, kind of categorize and minimize the circumstances that she found herself in. So on an abuse of discretion standard, then I'm to find what the district court did illogical, implausible, or without support in the record, correct? Yes, Your Honor. And the government submits it under these facts for each of the challenge enhancements that the district court had more than a substantial record, for example, on the vulnerable victim enhancement JPG allocated at sentencing and was sitting there face-to-face with the court explaining circumstances. The only other issue the government wanted to address, unless the court has questions for the government, is the issue relating to the abuse of trust enhancement. The government submits that in this case, unlike each of the cases cited by the defendant, you have two facts that distinguish this case and that establish that defendant made efforts to portray himself as a broker, an investment broker, a professional. Those facts are, one, instructing his telephone personnel, like Mr. Martin, that to represent to investors that NGI Group, the scheme, maintained a commodities certificate or license and invited investors to come into the office to see the certificate, which, of course, didn't exist. The second fact, and I'd invite the court to look at the advertisement at page 131 and 132, because the advertisements by defendant present a clear picture of someone pretending to be an industry professional. The ad under one of the headers global trading says, and I quote, we are convinced that someone has what you are looking for and another is looking for what you need, and defendant's going to put those two together. That's a broker. That's what defendant wanted people to believe. These facts distinguish the instant case from the Caplinger case cited by defendant, from the Jolly case cited by defendant, in addition to the Mullins case, because in none of those cases did you have the particular types of advertising and representations of promotion by the scammer that you have here in this case. And for that reason, the government submits that the abuse of trust enhancement was more than supported by the record and should be affirmed. I'm almost out of time, Your Honors, but I am prepared to address any questions you may have for me. I don't have any, Judge Benson. Thank you very much. Thank you very much. Mr. Treman, although you are out of time, I'll give you a minute on rebuttal. The point that I would like to clarify with regard to the role enhancement is that Zaragoza was not charged in the Account I conspiracy. He was not charged as part of the wire frauds. He did not admit that he was part either of the conspiracy or the wire fraud. In fact, both in his plea agreement. That's not covered in his submissions to the district court for sentencing. That wasn't covered. He did not take the position that he was part of that. Nor did my client plead guilty to the money laundering account to which Zaragoza pleaded guilty. Even if, I mean, it's essentially like considering relevant conduct, and there's no requirement that the district court look to see whether there are underlying pleas either by the defendant or others who conspired or aided and abetted him, is there? The role enhancement has to be applied to the criminal conduct, as I indicated in the... Yes, but you're suggesting that there has to have been a conviction, an admission of guilt or complicity by the people. And isn't that a factual determination that the district court is permitted to make as part of the sentencing process? Well, there have to be some facts. There aren't any facts. But if the court found that that was the fact, there's no requirement that Mr. Zaragoza have been tried, convicted, or pled guilty to doing it, is there? And the answer to that is no. No. But there has to be evidence that the role enhancement is being applied to Zaragoza because he's part of the same criminal conduct. Which is the fact finding that the district judge is permitted to make as part of sentencing. Right. And in this case, there were no facts, and therefore, there's an abuse of discretion. There were no facts. Wasn't Zaragoza employed by the defendant at NGI? And the answer is yes, he was, but the scope is... Didn't he admit that he understood the investment program was a Ponzi scheme during the time he was employed? At the very end of that process when he was interviewed by FBI agents, that is what he said. Was he aware that there was a criminal investigation of the NGI group? I believe that he was. Yeah. And then there were detailed instructions that were given to one who gave them to him on how to withdraw the money, and then he withdrew $15,400 by signing the defendant's name. But that took place after the scheme was over. How could it be part of the criminal conduct? That's the question, isn't it? Yes, that's the question. Is the scheme over at that point? The district judge said no. It was a mail fraud and a wire fraud scheme. The allegations of the indictment show that the overt acts, there were no overt acts after or that even the event Your Honor is talking about was an overt act. But if they're trying to hide the money, which was taken during the scheme after he's sitting in jail and knows that the feds are going to try and freeze or forfeit all these assets that they can get their hands on, why can't the district court find that these are part of the criminal scheme to hide the proceeds of the fraud from the feds? There's no evidence that that's what any of those phone calls were about. Those phone calls were because the wife was out of money. Counsel, I'm not sure we're going to advance your client's cause by arguing that. We understand your argument, and we see the record. Thank you. Thank you. The case just argued is submitted.
judges: Benson, Tallman, Smith